IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | NO.  3:21-CR-432-M |
| | ) | |
| JIMMY MA | ) | |

**MEMORANDUM OPINION AND ORDER**

By order of reference dated December 16, 2021 (doc. 49), before the Court is the defendant's *Unopposed Motion for Temporary Release to Attend Doctor's Appointment,* filed December 15, 2021 (doc. 48).  Based on the evidence and applicable law, the motion is **GRANTED**.

**I.**

Jimmy Ma (Defendant) was charged by complaint with conspiracy to make false statements to a bank in violation of 18 U.S.C. § 1014.  (*See* doc. 1.)  He was arrested in this district and made his initial appearance on April 9, 2021, waived his right to a preliminary hearing, and was released on conditions of pretrial release by *Order Setting Conditions of Release* on that date.  (*See* docs. 5, 7, 8.)  His conditions included the standard condition that he not violate any federal, state or local law while on release, as well as a prohibition on the use or possession of a narcotic drug or other controlled substance unless prescribed for him by licensed medical practitioner, drug testing, and treatment if recommended.  (*See* doc. 8.)

By *Report of Violation of Conditions of Pretrial Release*, filed May 7, 2021, the supervising pretrial services officer notified the Court that Defendant had tested positive for the use of methamphetamine, and that he had admitted to use on three occasions.  (*See* doc. 15.)  At a hearing on May 25, 2021, to determine whether his conditions of pretrial release should be revoked, the supervising pretrial services officer testified that Defendant tested positive for methamphetamine

on April 27, 2021, that he admitted use prior to the test as well as on two other occasions, and that he tested positive for methamphetamine again on May 17, 2021, after the summons was issued. (*See* doc. 21.) Based on the testimony, the Court found probable cause to believe that Defendant violated his conditions of pretrial release by committing a Federal, State, or local crime while on release, which invoked a rebuttable presumption that there were no conditions that the Court set to assure the safety of the community, as well as clear and convincing evidence of a violation of his conditions of release. (*See* doc. 21 at 2.) In addition to the rebuttable presumption, it found it unlikely that he would begin complying with his conditions based on his repeated use of methamphetamine shortly after representing to the Court that he understood the consequences of violating his conditions of release. (*See id.* at 2-3.) His conditions of release were revoked, and he was remanded to the custody of the United States Marshal. (*See id.* at 3.)

On September 24, 2021, Defendant entered a plea of guilty to a felony information charging him with conspiracy to engage in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1956(h) (18 U.S.C. § 1957), and it was recommended that his plea be accepted. (*See* docs. 32, 38, 40.) The recommendation was accepted, and he was adjudged guilty of that offense on October 29, 2021. (*See* doc. 42.)

On November 12, 2021, Defendant sought reconsideration of the order revoking his pretrial release, contending that he had gone open heart surgery for a pacemaker prior to his incarceration, that he wished to seek treatment from the cardiologist who performed the surgery, and that he did not anticipate the revocation of his pretrial release. (*See* doc. 43.) His motion acknowledged that he had received some treatment while incarcerated. (*See id.*) At the hearing, Defendant testified that he thought his drug use was merely recreational but realized that he needed treatment for his

addiction. He also testified that his cardiologist prescribed more frequent maintenance visits for the particular type of pacemaker that he has than he is currently receiving, and that the cardiologist has specific expertise with that particular type of pacemaker. The motion for reconsideration was denied by order dated December 2, 2021. (*See* doc. 47.)

Defendant now seeks temporary release into the custody of his mother for less than 24 hours so that he may attend a scheduled appointment with his cardiologist. (*See* doc. 48.) His motion contends that although he has received some medical care for his congestive heart failure while in custody, the medical visits have been delayed, and the doctor has advised him that he cannot make necessary adjustments to Defendant's pacemaker, which was installed in November 2020, because he was not the one who installed it. (*Id.* at 1-2 & n. 1, 4-5.) He contends that he is not a flight risk because he has lived and worked in the community for many years, and that there were no allegations that he failed to report for supervision or contact his supervising pretrial services officer. (*Id.* at 4.) He also contends that he is not a danger to the community because his drug use occurred more than five months ago, and he would jeopardize his health if he used again. (*Id.*) His mother would pick him up from the prison facility where he is being detained on January 12, 2022, take him directly to her home where he will stay overnight under her supervision, take him to his appointment on January 13, 2022, and then immediately take him back to the prison facility. (*Id.* at 2-3, 5.)

On January 10, 2022, Defendant appeared in person and through counsel, who reiterated his testimony at his prior hearing. She also noted that the parties have not objected to the calculation in the presentence report of a relatively low guideline range, and that he hopes to obtain an additional reduction of that range. He affirmed that he understood that any violation of law or of his conditions of release during any temporary release would result in severe consequences. The

government does not oppose the motion for temporary release.

His mother separately appeared on that same date and orally affirmed, under oath, her willingness to be a third party custodian for Defendant during his temporary release, and her understanding of the conditions that would be imposed. She acknowledged her understanding that she will serve as a third party custodian who will pick Defendant up from the prison facility where he is being detained on January 12, 2022, take him directly to her home where she will supervise him subject to location monitoring via Smart Link Technology, take him to his medical appointment on January 13, 2022, and then immediately take him back to the prison facility. She also signed an order setting conditions of release, to which the original conditions of release are attached, to show her willingness and understanding to supervise her son during any temporary release.

## II.

Defendant relies on 18 U.S.C. §§ 3143(a)(1) and 3145(c) as bases for his request for temporary release. (*See* doc. 48 at 3.)

Section 3143(a) reflects a presumption in favor of detention that attaches to a convicted person such as Defendant. *See United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016). Section 3143(a)(1) states:

> Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1). The burden of establishing by clear and convincing evidence that he is not a flight risk or a danger community under § 3143(a)(1) falls on the defendant seeking release. Fed.

R. Civ. P. 46(c).

Section 3145(c) provides that a person subject to mandatory detention under § 3143(a)(2) may be ordered released if the person meets the conditions of release in § 3143(a)(1) and it is clearly shown that there are exceptional reasons why the person's detention would not be appropriate. *See* 18 U.S.C. § 3145(c); *see also U.S. v. Rothenbach*, 170 F.3d 183 (5th Cir. 1999) (*per curiam*).[1] Section 3143(a)(2) mandates the detention of persons who have been found guilty of certain offenses and who are awaiting imposition or execution of sentence, except in certain limited circumstances. It provides:

> **(2)** The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless--
>
> > **(A)(i)** the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
> >
> > **(ii)** an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
> >
> > **(B)** the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2). Some courts have found that § 3145(c) permits temporary release of convicted persons awaiting sentencing. *See United States v. Delacruz*, No. 3:17-CR-201, 2020 WL 3475218, at *3 (M.D. Pa. June 25, 2020) (citing *United States v. Williams*, 903 F. Supp. 2d 292, 298–302 (M.D. Pa. 2012), for the proposition that a district court possesses discretion to consider temporary release pending sentencing under § 3145(c)); *United States v. Morris*, No. 3:18-CR-6-

---

[1] In *U.S. v. Carr*, 947 F.2d 1239, 1240-41 (5th Cir. 1991), the Fifth Circuit explained that the "exceptional reasons" provision "was added to § 3145(c) with the mandatory detention provisions of § 3143(a)(2) and (b)(2) and was apparently designed to provide an avenue for exceptional discretionary relief from those provisions". This provision therefore also applies to the initial determination of whether detention is mandatory under § 3143(a)(2) despite its inclusion in a section generally covering appeals.

TWP-DCP, 2018 WL 6493640, at *2 (E.D. Tenn. Dec. 10, 2018) (finding exceptional reasons under § 3145(c) for a three-day temporary release of defendant detained pending sentencing under §3143(a)(2), who also met requirements under 3143(a)(1), to attend the funeral of his six-year-old son, also considering his minimal criminal history and the availability of a third party custodian and GPS monitoring during release); *United States v. Goss*, No. 1:14-cr-00141-JAW, 2015 WL 5920267, at *2 (D. Me. Oct. 9, 2015) (assuming based on an unpublished First Circuit case that it had the authority under § 3145(c) to order the defendant's temporary release). By its plain language, however, § 3145(c) applies to persons subject to mandatory detention under § 3143(a)(2) pending sentencing. Defendant's motion notes that he is not subject to mandatory detention under § 3143(a)(2), and the offense of which he has now been convicted does not fall within the ambit of § 3142(f)(1)(A),(B), or (c). Section § 3145(c) therefore does not apply in this case.

While § 3142(i) expressly provides for temporary release of detained defendants awaiting trial, it does not apply to detained defendants who have already been convicted and are awaiting sentencing. *See United States v. Morris*, 452 F. Supp.3d 484, 487 (N.D. Tex. 2020). Nevertheless, some courts have permitted temporary release of convicted persons awaiting sentencing under this section. *See United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *3 (E.D. Mich. Mar. 27, 2020) (stating that § 3142(i) despite the fact that the defendant had pled guilty and was awaiting sentencing instead of trial because the provision specifically permitted temporary release by subsequent order). Additionally, as Defendant notes, 18 U.S.C. § 3622 provides for temporary release of a prisoner who is serving a sentence of imprisonment in the Bureau of Prisons (BOP) for

purposes of obtaining medical treatment, but he is not yet in BOP custody.[2] Like § 3145(c), § 3143(a)(1) does not expressly provide for temporary release. As noted, some courts have found that § 3145(c) permits temporary release of convicted persons who are required by law to be detained pending sentencing based on the offense of conviction, although it does not appear that any court has specifically addressed whether § 3143(a)(1) likewise allows for temporary release. A finding that § 3143(a)(1) does not authorize temporary release for detained convicted persons who were eligible for pre-sentencing release based on the offense of conviction appears incongruent with that finding.

Here, there has not been a prior finding that Defendant poses a flight risk or danger to any other person or the community. His pre-sentencing detention stems from revocation of his conditions of pretrial release based on a finding that he was not likely to begin complying with his conditions based on his use of methamphetamine shortly after his release despite acknowledging in open court that he understood the consequences of violating his conditions. According to the bond report, he has lived and worked in the community for many years. After no motion to detain was filed, he was initially released and reported for supervision by his supervising pretrial services officer. His admitted drug use occurred eight months ago, and he has been in custody since then. He has now been convicted of a non-violent offense, and it is undisputed that he faces a relatively low guideline range and hopes to obtain an additional reduction of that range. He is seeking temporary release to obtain medical care from the cardiologist who performed the surgery to install

---

[2]Section 3622 provides that BOP may release a prisoner "for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him." One of the enumerated reasons for allowing release includes "obtaining medical treatment not otherwise available[.]" 18 U.S.C. § 3622(a)(3).

a pacemaker in November 2020, and which cannot be provided by the doctor who has seen him while in custody. His mother has affirmed under oath that she is willing to serve as a third party custodian who will pick Defendant up from the prison facility where he is being detained on January 12, 2022, take him directly to her home where she will supervise him subject to location monitoring via Smart Link Technology, take him to his appointment on January 13, 2022, and then immediately take him back to the prison facility.

Defendant has made the required showing by clear and convincing evidence that he would not pose a flight risk or a danger to any person or the community if released temporarily into the third party custody of his mother solely for purposes of allowing him to attend an appointment with the cardiologist who installed his pacemaker.

### III.

Defendant's motion is **GRANTED**. He shall be released from the facility in which he is currently detained by the United States Marshal to the third party custody of his mother after 12:00 p.m. on January 12, 2022, for the sole purpose of attending a cardiology appointment on the morning of January 13, 2022. At the conclusion of the medical appointment on the morning of January 13, 2022, he must immediately return to the prison facility at which he is being held.

While on temporary release, Defendant is subject to the original conditions of release imposed by *Order Setting Conditions of Release* on that date. In addition, he will submit to location monitoring while on temporary release and be subject to home incarceration at his mother's residence, which means that he is restricted to a 24-hour-a-day lockdown at her residence except for the scheduled medical appointment on January 13, 2022, and travel from the prison facility to his mother's home, from his mother's home to the medical facility where he will be seen on January 13,

2022, and from that facility back to the prison facility. During his temporary release, he will be monitored by the pretrial services officer via SmartLink Technology. He must pay all or part of the cost of the monitoring program based on his ability to pay, as determined by the pretrial services officer.

    Signed this 10th day of January, 2022.

                                                  IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE